COMMONWEALTH *vs.* FELIX SANTIAGO.

Suffolk. April 9, 1997. - July 21, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Practice, Criminal,* Argument by prosecutor, New trial, Instructions to jury, Reasonable doubt. *Evidence,* Relevancy and materiality. *Witness,* Limits on testimony. *Homicide. Malice. Self-Defense.*

At the jury trial of a juvenile on an indictment for murder in the first degree, the prosecutor's improper appeals to the jury's sympathy, improper argument of his own subjective assessment of the evidence, and improper argument of highly inflammatory facts not in evidence [494-500], cumulatively, with other error in the admission of certain irrelevant testimony, constituted prejudicial error requiring reversal of the defendant's conviction, in circumstances in which the Commonwealth's evidence of the defendant's guilt was not so overwhelming as to overcome the effect of the prosecutor's numerous improper statements and where the judge's instructions in response to the defendant's objections did not mitigate the errors [500-503].

At the trial of a juvenile charged with murder in the first degree, the evidence was sufficient to permit the jury to infer premeditated intention to kill, and in circumstances in which the evidence showed that the defendant participated in a shootout resulting in the death of a bystander, the Commonwealth was not required to prove that the defendant fired the fatal shot. [503-504]

At the trial of an indictment for murder, in which the evidence demonstrated that the defendant participated in a shootout in which a bystander was killed, the judge properly within his discretion excluded evidence proffered by the defendant of the other shooter's pleas of guilty to the manslaughter of the same victim and to armed assault with intent to kill the defendant, but at the retrial the admission of the convictions is to be within the discretion of the trial judge. [504-505]

At the trial of a juvenile for murder in the first degree, there was no error in the judge's instructions to the jury on reasonable doubt; the judge properly instructed the jury on the third prong of malice; the judge's instructions on permissible inferences were not erroneous; and the order of the particular instructions on self-defense and the elements of the crime created no error. [505-506]

INDICTMENTS found and returned in the Superior Court Department on August 5, 1994.

The cases were heard in the juvenile session of the Roxbury

Division of the District Court Department by *R. Marc Kantrowitz*, J.

On appeal to the jury session of the Boston Juvenile Court, the case was tried before *John P. Corbett*, J.

*Willie J. Davis* for the defendant.

*Katherine E. McMahon*, Assistant District Attorney (*James W. Coffey*, Assistant District Attorney, with her) for the Commonwealth.

FRIED, J. The defendant Felix Santiago, a juvenile, was indicted for the murder of Vilma Flores; armed assault with the intent to murder and assault by means of a dangerous weapon on Ludwin Midence; unlawful possession of a firearm; and unlawful possession of ammunition.[1] The defendant waived his right to a jury trial in the first instance, and was adjudicated delinquent on all counts after a bench trial. He then claimed a jury trial and moved to dismiss the murder indictment. That motion was denied and the defendant sought relief from this court. See *Santiago* v. *Commonwealth*, 422 Mass. 1012 (1996). He was unsuccessful. A jury in Boston Juvenile Court then found the defendant guilty of all five counts. The defendant was sentenced to a twenty-year term of commitment on the murder conviction, and was committed to the Department of Youth Services on the remaining convictions. The defendant appealed from only the conviction of murder in the first degree.[2] We reverse the conviction.

I

On June 5, 1994, the victim, four months pregnant, accompanied her fiancé to Carter Playground in Boston to watch him play softball. The event took place one day before the victim's eighteenth birthday. Four teams were playing that day, and a crowd of approximately five hundred to one thousand people gathered to watch the games. Shortly after 5 P.M., the victim walked to the concession stand to buy food. On her way

---

[1]The Commonwealth sought to transfer the juvenile so that he could be tried as an adult, but the motion judge, after a hearing, declined.

[2]The defendant is not entitled to review under G. L. c. 278, § 33E, because he was adjudicated delinquent as a juvenile on the theory of murder in the first degree. In *Patrick P.* v. *Commonwealth*, 421 Mass. 186, 194 (1995), we held that "a determination of delinquency by reason of murder is not a 'capital' case." General Laws c. 278, § 33E, provides for its special review only in "capital" cases.

back, she passed two groups of men exchanging angry words on and near the sidewalk adjacent to Columbus Avenue. A witness identified the defendant, who was known to him, as a young Hispanic man straddling a bicycle between parked cars on Columbus Avenue near where the men were arguing.

According to a statement the defendant made to police, the defendant had seen a rival group of men at the park, and he had informed his friends of their presence. He was asked by his friend, one of the men who was later involved in the argument, to "go get something." At this direction, the defendant left to borrow a gun from a nearby video store and returned to the scene. What happened next is in dispute. An argument broke out between the defendant's friends and the other group. Apparently one of the men in the other group said, "take him out," referring to the defendant's friend. The defendant told the police that the men on the sidewalk fired first, but none of the witnesses to the shooting was able to determine which side fired first. It appeared that four shots were fired from the area where the defendant was straddling his bicycle before his gun jammed, and several more shots were fired from the area where the other group was standing. As the victim walked past the two groups, she was struck by a bullet and killed. An eight year old boy playing within a few feet of the defendant was shot in the leg. The bullet which killed the victim was never recovered, and therefore there was no conclusive forensic evidence as to whether the bullet which killed the victim was fired by the defendant or by one of the men in the other group. The Commonwealth sought to demonstrate at trial that the position of the victim when she was shot proved that the bullet came from the defendant's gun.

Defense counsel argued that the Commonwealth could not prove who fired the fatal shot, and that the defendant engaged in the shooting as an act of self-defense. He pointed to the fact that the defendant retrieved the gun only at the behest of an older friend, and argued that the defendant did not start firing until the other group threatened his friend and had fired the first shot.

## II

The defendant's first argument is that the prosecutor, in his opening and closing statements as well as in calling the victim's sister as a witness, improperly appealed to the jury's sympathy

for the victim in a way that may have "swe[pt] the jurors beyond a fair and calm consideration of the evidence." *Commonwealth* v. *Perry*, 254 Mass. 520, 531 (1926). The defendant points to five instances in which he claims the prosecutor improperly appealed to the sympathy of the jury.

1. *Repeated references to the age, birthday, and pregnancy of the victim.* The defendant claims that the prosecutor's repeated references to the victim's age, pregnancy, and birthday were improper and calculated to influence the jury to render a verdict based on emotion and sympathy for the victim rather than on a reasoned judgment based on the evidence at trial. In his opening statement, the prosecutor referred five times to the fact that the victim was seventeen years old and pregnant. In his closing, he referred to those same facts seven more times, and noted four times that the victim was to have a birthday one day after the shooting and that, coincidentally, her twentieth birthday corresponded with the day of the closing arguments in the trial. The defendant objected at the end of both the prosecutor's opening and closing statements. The following portion of the prosecutor's closing argument is illustrative:

> "Because of [the defendant's] actions, [the victim] is dead. She no longer exists. She is not going to walk through that door today. . . . She is dead and buried. Murder is violent and it is final. And a [seventeen] year old girl, four months pregnant, is dead because of him and no one else. I want you to think about that. Seventeen years old, four months pregnant. It is unconscionable what he did that day. It is mind boggling. . . .

> "Today she would have been twenty years old . . . . Twenty years old today. I want you to think about that. She couldn't reach her [twentieth] birthday because of this guy right here who is wearing a shirt and tie. She would still be a kid, [twenty] years old. . . . It is mind boggling what he did that day and a pregnant girl is dead."

The prosecutor has a particular obligation not only to argue the Commonwealth's case forcefully and aggressively, but also to do so in a way that states the evidence clearly and fairly and inspires confidence that the verdict was reached based on the evidence rather than sympathy for the victim and her family. See *Commonwealth* v. *Shelley*, 374 Mass. 466, 472 (1978), cit-

ing *Berger* v. *United States*, 295 U.S. 78, 88 (1935), rev'd on other grounds, *Stirone* v. *United States*, 361 U.S. 212 (1960). The prosecutor failed in that latter obligation by his repeated references to the victim's personal characteristics. Certainly the prosecutor is entitled to tell the jury something of the person whose life had been lost in order to humanize the proceedings.[3] In a case such as this where the victim's character and personal characteristics are not relevant to any material issue, however, the prosecutor is under an obligation to refrain from so emphasizing those characteristics that he risks undermining the rationality and thus the integrity of the jury's verdict. The prosecutor not only unnecessarily repeated the victim's age and the fact of her pregnancy throughout his arguments, he suggested that these facts were issues the jury should consider in their deliberations when he repeatedly stated to the jury in reference to these facts, "I want you to think about that."

The jury have the ability to discount hyperbole and other improper statements, see *Commonwealth* v. *Anderson*, 411 Mass. 279, 287 (1991), and the trial judge's instructions are generally adequate to cure errors in the arguments, see *Commonwealth* v. *Francis*, 391 Mass. 369, 373-374 (1984). Thus, in many cases, arguments by the prosecutor, while in error, are not unduly prejudicial. See, e.g., *Commonwealth* v. *Pontes*, 402 Mass. 311 (1988); *Commonwealth* v. *Depradine*, 42 Mass. App. Ct. 401, 409 (1997). Contrast *Commonwealth* v. *Graziano*, 368 Mass. 325, 332 (1975) (use of ethnic stereotypes in closing required reversal). In this case, however, the prosecutor repeatedly appealed to the jury's sympathy, and the cumulative effect of such appeals must be considered.

2. *Testimony of the victim's sister.* The judge denied a motion in limine to exclude the victim's family members from testify-

---

[3]We note that .there is support in other jurisdictions for the proposition that the prosecutor may introduce testimony to "humanize" the victim. See, e.g., *McQueen* v. *Commonwealth*, 669 S.W.2d 519, 523 (Ky.), cert. denied, 469 U.S. 893 (1984) ("It would, of course, behoove the [defendant] to be tried for the murder of a statistic, but we find no error in bringing to the attention of the jury that the victim was a living person, more than just a nameless void left somewhere on the face of the community" where the testimony is not "emotional, condemnatory, accusative or demanding vindication"). But see *State* v. *Broughton*, 450 N.W.2d 874, 876 (Iowa 1990) ("we do not accept the State's argument that [testimony from the victim's family] should be received as a matter of course in order to 'humanize' the murder victim, [but] we cannot find sufficient prejudice in the rather innocuous biographical information").

ing on the grounds that none of them witnessed the events in question, and there was no issue as to identification of the victim. The victim's sister was the first witness called by the prosecution. She testified as to the victim's age, her relationship with her fiancé, her pregnancy, and related that the victim was in school and working, and that the family had just celebrated the victim's birthday. The victim's sister also testified that on the day her sister had been shot, she had gone to the hospital where she waited until she was told her sister had died. After the witness testified, defense counsel moved for a mistrial on the ground that the testimony offered no relevant facts and was designed solely to elicit the jury's sympathy. The motion was denied. As the victim's sister left the witness stand, she walked to the front of the defense table and yelled at the defendant, "Murderer. You killed my sister." Defense counsel again moved for a mistrial which the judge denied. The judge explained to the jury that emotions were strong in a case such as this and he said, "I ask you to disregard that particular outburst. . . . Don't consider it in any way and don't even discuss it in your deliberations."

Both sides in a criminal trial have substantial latitude to try the case in their own way without significant interference so long as they engage in no calculated impropriety. *Commonwealth* v. *Andrews*, 403 Mass. 441, 451 (1988) (jury instruction adequate to cure unsolicited statement from victim's mother, "That's Billy. He's my son and my friend. He was a kind and beautiful person. Why did you kill him?"). There is nothing in the record to suggest that the sister's outburst was planned or even that the prosecutor had any reason to suspect that the sister might react in this way. Defense counsel at trial recognized as much: "I know the district attorney didn't anticipate [the outburst] because we didn't have this below [at the jury-waived trial]." Whether to declare a mistrial in such circumstances is a decision within the sound discretion of the trial judge who is in the best position to determine whether the outburst would likely prejudice a jury. The judge in this case did not abuse his discretion in instructing the jury not to consider the outburst rather than declaring a mistrial.

The more troubling question is whether the judge erred in allowing the sister to testify at all. In cases such as this, there is no error where a member of the victim's family likely to elicit

sympathy testifies as to some relevant issue,[4] even a relatively peripheral one and even where another witness could have given the same information without evoking the same level of sympathy from the jury. See *Commonwealth* v. *Andrews, supra* at 450-451; *Commonwealth* v. *Harris,* 28 Mass. App. Ct. 724, 733 (1990), *S.C.,* 409 Mass. 461 (1991). Cf. *Commonwealth* v. *Lapointe,* 402 Mass. 321, 331-332 (1988). In *Commonwealth* v. *Gordon,* 422 Mass. 816, 830-831 (1996), however, while not finding prejudicial error, we "urge[d] caution in admitting evidence in criminal cases that appears to be more related to evoking sympathy [than] to proving the elements of the alleged crime or crimes." In this context, where the sister offered no testimony relevant to any contested issue, where the prosecutor made excessive pleas to sympathy in his arguments, and where the sister was allowed to testify in substantial detail about the victim's life and her own experience concerning the victim's death, such testimony was improper. Although the introduction of this testimony alone might not be cause for reversal, the prejudicial effect of this testimony must be weighed along with the other errors in this trial. Such testimony takes on greater importance in a case such as this where the prosecutor consistently made improper appeals to the jury's natural sympathy for the victim. In addition, had the victim's sister not been asked to testify, she would not have been in the position to make the outburst she directed at the defendant at the end of her testimony.

3. *Repeated references to the children at the park and crowd reactions to the shooting.* The prosecutor made repeated references to the large crowd in the park, the fact that there were many children running about, and that, after the shooting, "pandemonium" broke out. Such statements do not constitute error in this context. First, the prosecutor is entitled to set the scene, and several of the witnesses the prosecutor called testified to the facts the prosecutor described. The prosecutor would

---

[4]The threshold question for determining relevancy is whether the evidence has a "rational tendency to prove *an issue in the case*" (emphasis supplied). *Commonwealth* v. *Fayerweather,* 406 Mass. 78, 83 (1989). Irrelevant evidence is not admissible, see P.J. Liacos, Massachusetts Evidence § 4.1.2, at 113-115 (6th ed. 1994), and even some relevant evidence may be excluded if the prejudicial value outweighs its probative effect. *Commonwealth* v. *Lewin (No. 2),* 407 Mass. 629, 631 (1990). While the trial judge has substantial discretion in making these evaluations, see *Commonwealth* v. *Tobin,* 392 Mass. 604, 613 (1984), in this case, the lack of relevance is abundantly clear.

cross the line into impermissible argument if he were to stress repeatedly aspects of the scene that were highly prejudicial to the defendant but only peripherally relevant to the defendant's guilt or innocence. That was not the case here. The evidence that there were many people around including children may have prejudiced the defendant in the eyes of the jury, but the testimony was highly relevant to the defendant's guilt. Repeatedly firing a weapon near a large crowd is wanton and reckless behavior that may supply an element of murder in the second degree or of involuntary manslaughter, on both of which the jury were instructed as lesser included offenses of murder in the first degree. See *Commonwealth* v. *Raymond*, 424 Mass. 382, 390 (1997) (statements regarding the conscious suffering of the victim were proper even though they may have elicited the jury's sympathy because they were relevant to whether the murder was committed with extreme atrocity and cruelty).

4. *Personal belief of the prosecutor.* The defendant objects to three separate statements on this ground. First, the prosecutor stated, "I suggest to you I overwhelmingly proved who fired that fatal shot." Generally, there is no error in a prosecutor's describing the evidence presented as "overwhelming" or "undisputed." See *Commonwealth* v. *Shea*, 401 Mass. 731, 738-739 (1988). Although in this case such a description may be difficult to reconcile with the evidence, assessing the strength of a case is a permissible part of marshaling the evidence and arguing forcefully for a conviction. Where, however, the prosecutor's argument focuses on his own subjective assessment of the evidence, greater concern is warranted. See *Commonwealth* v. *Daigle*, 379 Mass. 541, 550 (1980) ("strongly disapprove[d]" but found no reversible error regarding statement, "I think on all the evidence it is overwhelming that this man is guilty . . . and I think that's the way you should find"). The statement in this case was similarly improper but less egregious because he did not tell the jury what to "find," and whatever prejudice it might have caused was alleviated in part by the judge's instructions that the jury was the sole judge of the facts.

The prosecutor also stated, "Ladies and gentlemen of the jury, the greatest tool in this business, as far as I'm concerned, is common sense." There is no error in this statement. Jurors should use common sense to assist in reaching their verdict. See *Commonwealth* v. *Cook*, 419 Mass. 192, 203 & n.9 (1994) (find-

ing no error in prosecutor's statement which among other things encouraged the jurors to use their common sense). That the prosecutor interjected his personal belief in this context does not make the statement erroneous.

Third, the prosecutor, perhaps to counteract suggestions in defense counsel's closing that the defendant, in retrieving the gun, was acting at the directions of his older friends, stated, "I think he's old enough to make decisions on his own." Defense counsel objected to the remark. Isolated slips by the prosecutor where he interjects a personal pronoun do not constitute serious error. See *Commonwealth* v. *Raymond, supra* at 391-392, citing *Commonwealth* v. *Thomas*, 401 Mass. 109, 115-116 (1987). The likelihood of prejudice here was particularly slight because the ability of a person of the defendant's age to make his own judgments would be a matter within the personal experience of the jurors, and therefore the prosecutor's personal beliefs on the matter would be unlikely to affect the jurors' decision.

5. *Comment regarding fact not in evidence.* The prosecutor, in his closing argument, stated:

> "I want you to envision this scene. This person who now sits ten feet from you has this loaded nine millimeter handgun two feet from an eight-year old boy. That beautiful young kid who testified in front of you is two feet from this guy. I suggest to you that it is an incredibly insightful piece of evidence about what makes this guy tick. He doesn't care about anyone other than himself. He is willing to fire this gun two feet from an eight-year old boy's head. Think about that. That's what was testified to. That tells you a lot about this guy. *He is using an eight-year old boy as a shield*; and when that doesn't work he runs behind the car because he cares for no one but himself" (emphasis supplied).

It was entirely proper for the prosecutor to argue forcefully that it was reckless and wanton behavior for the defendant to engage in a shootout where an eight year old boy was exposed to the gunshots. The statement about using the child as a shield, however, was unwarranted by the evidence and highly inflammatory as it implied a direct intention to expose an innocent person to harm. Defense counsel objected to the statement.

References to facts not in the record or misstatements of the

evidence have been treated as serious errors where the misstatement may have prejudiced the defendant. In *Commonwealth* v. *Lamrini*, 392 Mass. 427, 432-434 (1984), a new trial was required where the prosecutor argued to the jury that robbery, not self-defense, was the motive for a murder even though the evidence of robbery was speculative at best. In *Commonwealth* v. *Shelley*, 374 Mass. 466, 469-470 (1978), we reversed a conviction where the prosecutor argued that the defendant's expert witnesses had been "bought" by the payment of excessive fees, were "mercenary soldiers" and "prostitutes," although there was no evidence that the experts received a large fee. In both of these cases, the evidence was not overwhelming, the misstatement went to the heart of the case, and no specific curative instructions were given. Contrast *Commonwealth* v. *Richenburg*, 401 Mass. 663, 674-675 (1988) (argument that victim was tied to a column not based in evidence but not prejudicial where evidence indicated she had been tied up, but not to column).

## III

The standard for determining whether a conviction must be reversed is whether the improper statements made by the prosecutor "constituted prejudicial error." *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993). The cumulative effect of all the errors in the context of the entire argument and the case as a whole is considered in making this determination. See *Commonwealth* v. *Loguidice*, 420 Mass. 453, 454 (1995); *Commonwealth* v. *Smith*, 387 Mass. 900, 912 (1983). The following factors are considered: whether defense counsel seasonably objected to the arguments at trial, *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 (1987); whether the judge's instructions mitigated the error, *id.*; whether the errors in the arguments went to the heart of the issues at trial or concerned collateral matters, *Commonwealth* v. *Shelley, supra* at 470-471; whether the jury would be able to sort out the excessive claims made by the prosecutor, see *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 277 (1982) ("The jury could be expected to take both arguments with a grain of salt"); and whether the Commonwealth's case was so overwhelming that the errors did not prejudice the defendant. *Commonwealth* v. *Clary*, 388 Mass. 583, 591 (1983).

Defense counsel in this case was particularly vigilant in

responding to the prosecutor's arguments that might have inflamed the jury's emotions. He objected to the excessive references to the personal characteristics of the victim in the prosecutor's opening and closing statements. He objected to the victim's sister's testimony before and after she testified and asked for a mistrial after her outburst. He also noted the shield misstatement and most of the instances where the prosecutor's personal beliefs were arguably interjected. In contrast, the judge did not take an aggressive approach to correcting the prosecutor's errors. With the exception of a forceful statement to the jury to disregard the victim's sister's outburst, he never specifically addressed any of defense counsel's objections except to note them and promise "those things you usually hear in instructions about arguments." In the instructions to the jury, the judge stated,

> "As I've said often in the course of this trial, the arguments of counsel, the opening statements of counsel, are not evidence. You may use them as they emphasize the things the lawyers think are important."

Without specifically mentioning sympathy or correcting the misstatement about using the boy as a shield, this general instruction is not enough to fully remedy the prosecutor's errors.

The trial focused on two issues: whether the defendant fired the shot that killed the victim and whether the actions of the other group justified the defendant's actions such that he would either be not guilty or guilty of a lesser crime than murder in the first degree. None of the issues discussed, with the exception of the prosecutor's assertion that he had "overwhelmingly" proven that the defendant fired the fatal shot, spoke directly to either of these issues. But that is the nature of appeals to sympathy: they do not misstate any piece of evidence, but rather obscure the clarity with which the jury would look at the evidence and encourage the jury to find guilt even if the evidence does not reach the level of proof beyond a reasonable doubt. Thus, the strength of the Commonwealth's case is particularly crucial where improper appeals to sympathy are made. Where guilt is clear, we may conclude that the overwhelming strength of the evidence led the jury to its conclusion, but where the questions are close and difficult, we cannot be certain that the jury's conclusion was not clouded by the

improper appeals and that their verdict was based on a dispassionate view of the evidence.

In this case, the Commonwealth sought to prove that the defendant fired the shot that killed the victim and that he fired it with the premeditated intention to kill one of the men (Midence) on the sidewalk. The Commonwealth need not prove an intent to kill the victim because intent could be transferred from the intent to kill one of the men on the sidewalk. *Commonwealth* v. *Pitts*, 403 Mass. 665, 668-669 (1989). The Commonwealth's case of premeditated intent to kill a man on the sidewalk was strong, since the defendant had left the scene after he saw the men on the sidewalk and returned with a gun. Not only does this show premeditation, but it also tends to negate the defendant's claim that he was returning fire and shot in self-defense. Under the law of the Commonwealth, self-defense requires retreat, if possible, before resorting to deadly force. *Commonwealth* v. *Lapointe*, *supra* at 328-329. That the defendant was able to leave the park after encountering the men on the sidewalk demonstrated that he had ample opportunity to retreat. Although the case for premeditation is strong, the defendant might have returned with the gun only with the intent to frighten the others or to use it to protect himself if attacked. In such a scenario, the jury would have been justified in returning a verdict of murder in the second degree, manslaughter, or even not guilty based on self-defense. Therefore, it is at least possible that the prosecutor's invocation of sympathy and his statement regarding the use of the boy as a shield might have so inflamed the jury that they returned a verdict of murder in the first degree even though a dispassionate jury might have found the defendant not guilty based on self-defense, or guilty of a lesser crime.

As to the second issue, whether the defendant fired the fatal shot, the evidence at the trial was far from overwhelming. There was no conclusive forensic evidence and the Commonwealth's case was based solely on the position of the victim, as remembered by witnesses, relative to the shooters. Counsel for each side proceeded on the assumption that the Commonwealth would have to prove who fired the fatal shot, and in this appeal, the Commonwealth must adhere to the theory on which it tried the case, though it is not bound by it on retrial. Since it was less than certain whose shot killed the victim and the Commonwealth made this a central part of its case, there was

ample room for passion to cloud the jury's judgment on this score. Since the Commonwealth's case as tried was not so overwhelming as to overcome the errors committed by the prosecutor, and given the number of errors and their significance, we are not satisfied that the defendant received a trial free of undue prejudice. There must be a new trial.

## IV

We address several issues which are likely to arise at a second trial.

## A

The defendant claims that he should be found not guilty as a matter of law because the Commonwealth can prove neither that he instigated the shootout nor that he fired the fatal shot. As to the first, while the Commonwealth must prove beyond a reasonable doubt that the defendant was not acting in self-defense, see *Commonwealth* v. *Beauchamp*, 424 Mass. 682, 685-690 (1997), it need not prove that the defendant fired the first shot. The defendant, after seeing the men on the sidewalk, left the scene to retrieve a gun and loaded it during an argument with those men. He chose to return to the park even though he must have known there was a high risk of violence, and he made no attempt to flee rather than join the shootout. These facts alone would be enough to permit the jury to infer premeditated intention to kill. See *Commonwealth* v. *Ruci*, 409 Mass. 94, 96-97 (1991).

As to the issue whether the defendant fired the fatal shot, where the defendant chooses to engage in a gun battle with another with the intent to kill or do grievous bodily harm and a third party is killed,. the defendant may be held liable for the homicide even if it was the defendant's opponent who fired the fatal shot.[5] Thus, the inability to prove who fired the fatal shot would not be ground for a directed verdict. This conclusion is endorsed by standard jury instructions.. The defendant's act must be "a cause, which, in the natural and continuous sequence, produces the death, and without which the death

---

[5]There is no bar to the Commonwealth's proceeding at retrial on this theory. See *Commonwealth* v. *Arsenault*, 361 Mass. 287, 298 (1972) ("The Commonwealth made no binding agreement or stipulation locking itself into the theory of its first trial").

would not have occurred." *Commonwealth* v. *Rhoades*, 379 Mass. 810, 825 (1980), quoting California Jury Instructions, Criminal § 8.55 (4th rev. ed. 1979). See Model Jury Instructions For Use In The District Court § 5.635 (1995) ("By 'causing' the victim's death, I mean that he must have directly and substantially set in motion a chain of events that produced the victim's death in a natural and continuous sequence and without which death would not have occurred"). The defendant's acts need not be the sole or exclusive cause of death. See *Commonwealth* v. *Rhoades*, *supra.* By choosing to engage in a shootout, a defendant may be the cause of a shooting by either side because the death of a bystander is a natural result of a shootout, and the shootout could not occur without participation from both sides.

B

The judge denied the defendant the opportunity to introduce the guilty pleas of the shooter on the sidewalk, Ludwin Midence. Midence pleaded guilty to manslaughter of the same victim, Vilma Flores, and to armed assault with the intent to kill the defendant. The defendant argues that these pleas support both his argument that the other shooter fired the fatal shot and that the defendant was acting in self-defense, so that the judge's refusal to admit the evidence of the convictions denied him due process. The admission of the convictions is within the discretion of the judge on retrial, although the defendant's contentions lose much of their force if the Commonwealth adopts the alternative theory open to it. Ordinarily, "in a criminal case the record of conviction or acquittal in another case to which the defendant was not a party is not admissible to establish the truth of any fact involved in such a conviction or acquittal." See *Commonwealth* v. *Tilley*, 327 Mass. 540, 548 (1951) (admission of conviction of principal by prosecution erroneous in trial of accessory). Admission of a guilty plea is of even less value because the plea is often the result of bargaining with the prosecutor and is not necessarily the equivalent of an admission of full guilt for the act alleged. Where the defendant is seeking to introduce the evidence, its introduction might be required if it were critical to the determination of guilt or innocence, such as where another individual has pleaded guilty or been adjudged guilty of the same act for which the defendant is charged, and there is no theory of joint involvement available. See 1A J.

Wigmore, Evidence § 142 (4th ed. 1983). In this case, there is no such reason to admit the evidence. As we have explained, there is no inconsistency in finding both shooters criminally responsible for this victim's death. As to the assault with intent to kill conviction, there was no contention by the prosecutor that the other shooter was acting in self-defense or in an otherwise lawful manner. The case proceeded on the theory that both shooters were trying to kill each other.

## C

The defendant points to several errors he claims the judge made in instructing the jury. As to the reasonable doubt instructions, there is no error in the statement that proof beyond a reasonable doubt "leave[s] you with a moral certainty, a clear and settled belief that the defendant is guilty and there is no other reasonable explanations of the facts as proven." Recent cases by this court and the United States Supreme Court clarify how the term "moral certainty" may be properly used, see, e.g., *Victor* v. *Nebraska*, 511 U.S. 1 (1994); *Commonwealth* v. *Bonds*, 424 Mass. 698 (1997), and its use here accords with those decisions.

The defendant makes a series of claims with regard to the malice instructions. First, the defendant claims that an instruction on the third prong of malice should not have been given because the conviction was premised on a theory of murder in the first degree. The judge instructed the jury that malice "includes any unexcused or unjustified specific intent . . . to do an act creating a plain and strong likelihood that death or grievous bodily harm will follow." Third prong malice is irrelevant where there is a conviction for murder in the first degree based on deliberate premeditation, see *Commonwealth* v. *Morgan*, 422 Mass. 373, 382 (1996), but that does not mean there is error in giving the instruction. The jury were properly instructed on the third prong of malice as part of the lesser included offense of murder in the second degree. The third prong of malice is clearly relevant to this fact situation where the defendant fired a gun several times in a setting crowded with innocent bystanders.[6]

At the prosecutor's request, the judge instructed the jury that

---

[6]On retrial, the instructions on malice should conform to our statements in *Commonwealth* v. *Eagles*, 419 Mass. 825, 836 (1995), and *Commonwealth* v. *Fuller*, 421 Mass. 400, 412 (1995).

they could infer malice and premeditation from the defendant's leaving the scene, returning with a gun, and using it. Such inferences are permissible. *Commonwealth* v. *Ruci,* 409 Mass. 94, 96-97 (1991). The judge may give an instruction to that effect, so long as it is phrased as a permissible inference, and a reasonable juror would understand it that way.

The defendant complains that the judge instructed first on self-defense and then on the elements of the crime, and that he refused to instruct specifically that in order to find the defendant guilty of either murder or manslaughter the jury must conclude that the defendant was not acting in self-defense. Although it is generally preferable to instruct on the elements of a defense to a crime after describing the elements of the crime, a specific order in jury instructions is not required. See *Commonwealth* v. *Raymond,* 424 Mass. 382, 385-388 (1997). Because the judge did give the self-defense instructions first, it would have been better to remind the jury at the end of the instructions that self-defense negated culpability and that the Commonwealth bore the burden of proving the lack of self-defense, and, in the context of this case, on retrial this should be done. Compare *Commonwealth* v. *Doucette,* 391 Mass. 443, 452 (1984), quoting *Commonwealth* v. *Peters,* 372 Mass. 319, 324 (1977) ("the law does not require repetition of the same thought at each turn").

## V

The judgment is reversed, the verdict is set aside, and the case is remanded for a new trial.

*So ordered.*