Following a jury trial, the defendant, Lesley Jurczuk, who had been indicted for murder in the second degree, was convicted of the lesser included offense of voluntary manslaughter. On appeal, he claims error in the order denying his motion to dismiss his indictment, improper conduct by the prosecutor, and error in jury instructions. We affirm.
1. Motion to dismiss. Prior to trial, the defendant moved to dismiss the indictment on several grounds, and he renews most of his contentions on appeal. Specifically, he argues that the evidence before the grand jury was insufficient to demonstrate probable cause, and that the integrity of the grand jury was impaired by the Commonwealth's misleading and unfair presentation of the evidence. We discern no error warranting dismissal of the indictment.
a. Sufficiency of evidence. When reviewing a motion to dismiss based on the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth. See Commonwealth v. Levesque, 436 Mass. 443, 444 (2002). The sole issue that we confront is whether the grand jury heard "sufficient evidence to establish the identity of the accused ... and probable cause to arrest him." Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). In this context, probable cause requires "reasonably trustworthy information ... sufficient to warrant a prudent [person] in believing that the defendant had committed ... an offense." Commonwealth v. O'Dell, 392 Mass. 445, 450 (1984), quoting from Commonwealth v. Stevens, 362 Mass. 24, 26 (1972).
The grand jury indicted the defendant on a charge of murder in the second degree. To survive a motion to dismiss, the Commonwealth was required to present the grand jury with evidence showing probable cause for each of the two elements of the offense, that (1) the defendant committed an unlawful killing; and (2) the defendant did so with malice. See Commonwealth v. Earle, 458 Mass. 341, 346 (2010). Malice can be established by proving any of three prongs: "(1) the defendant intended to cause the victim's death; (2) the defendant intended to cause grievous bodily harm to the victim; or (3) the defendant committed an intentional act which, in the circumstances known to the defendant, a reasonable person would have understood created a plain and strong likelihood of death." Ibid.
The defendant argues that there was sufficient proof of a death, but insufficient proof of either element of the offense. The motion judge found, and the grand jury heard evidence as follows:
"[The defendant] and the victim fought while alone in their cell; immediately thereafter their third cellmate saw that the victim appeared to have been severely beaten; a short time later correction officers found the victim lying unconscious with a swollen and bloodied face on the floor of the cell; the victim died of blunt trauma to the head and neck that he suffered during this beating; and [the defendant] demonstrated consciousness of guilt by trying to dispose of the bloodstained T-shirt he was wearing and washing himself clean."
Based on the evidence presented to it, the grand jury reasonably could have found that the defendant had beaten and killed his cellmate. See Commonwealth v. Nadworny, 396 Mass. 342, 357 (1985) (defendant was only person present when victim died). See also Commonwealth v. Conkey, 443 Mass. 60, 74 (2004) (consciousness of guilt evidence "may be considered along with all other evidence" to evaluate sufficiency).
From the evidence regarding the extent of the victim's injuries[2] and the apparent attempt by the defendant to clean himself of the victim's blood, there was probable cause to believe that the defendant had the requisite intent to support an indictment for murder in the second degree. See Nadworny, supra at 358 ("The intent to inflict an injury may be inferred from, among other things, the condition of the body and the disposal of evidence").
b. Impairment of the grand jury proceedings. A "defendant bears a heavy burden to show impairment of the grand jury proceeding." Commonwealth v. LaVelle, 414 Mass. 146, 150 (1993). A motion to dismiss on this ground may be allowed only on a showing that "(1) the Commonwealth knowingly or recklessly presented false or deceptive evidence to the grand jury; (2) the evidence was presented for the purpose of obtaining an indictment; and (3) the evidence probably influenced the grand jury's decision to indict." Commonwealth v. Silva, 455 Mass. 503, 509 (2009).
The defendant contends that the Commonwealth led the grand jury to believe there was evidence of strangulation through Detective Benton's testimony that the victim's hyoid bone fracture was the kind of injury often seen in strangulation cases. Yet, the defendant has not shown that the detective's testimony was either false or misleading. The grand jury reasonably would have understood Detective Benton's testimony to be contrasting the injuries in this case from those found in strangulation cases. As the motion judge found, "[t]he clear import of Detective Benton's testimony was to emphasize Dr. Cummings' conclusions that the victim had been hit multiple times with great force." In any event, we agree with the motion judge that, given the strength of the other evidence introduced, Detective Benton's off-hand comment regarding injuries in strangulation cases made no difference in the grand jury's decision to indict.[3]
2. Prosecutorial misconduct.[4] The defendant maintains that he was so prejudiced by the prosecutor's improper appeal to the jury's sympathy in his opening statement, in his closing argument, and in the introduction of improper evidence, that a new trial is required. The defendant mainly takes issue with the "death sentence" rhetoric used by the prosecutor during his opening and closing remarks, asserting that said rhetoric overstepped the bounds of zealous advocacy and appealed excessively to the jury's sympathy. We disagree.
Contrary to the defendant's contention, the prosecutor's statements were fair inferences drawn from the evidence or, at worst, merely amounted to "excusable hyperbole." Commonwealth v. Camacho, 472 Mass. 587, 607 (2015) (quotation omitted). See Commonwealth v. Johnson, 429 Mass. 745, 749 (1999), quoting from Commonwealth v. Sanchez, 405 Mass. 369, 376 (1989) ("To the degree the recitation of the evidence was inflammatory, that was inherent in the odious ... nature of the crime[ ] committed").
Furthermore, there was no prejudicial error as a result of the prosecutor's statements. "Remarks made during [opening and] closing arguments are considered in the context of the whole argument, the evidence admitted at trial, and the judge's instructions to the jury." Commonwealth v. Whitman, 453 Mass. 331, 343 (2009). The trial judge provided a detailed instruction that closing statements are not evidence prior to closing arguments, and even reiterated the instruction after closing arguments. "The jury have the ability to discount hyperbole and other improper statements, ... and trial judge's instructions are generally adequate [to] cure errors in the arguments." Camacho, supra at 609, quoting from Commonwealth v. Santiago, 425 Mass. 491, 495 (1997). We presume that the jury followed the judge's instructions. See Commonwealth v. Maynard, 436 Mass. 558, 571 (2002).
Similarly missing its mark is the defendant's claim that the prosecutor improperly appealed to sympathy for the victim when he examined his very first witness, the victim's mother, and elicited the amount of time her son had remaining on his sentence. The Commonwealth may properly "tell the jury something of the person whose life [has] been lost in order to humanize the proceedings." Commonwealth v. Degro, 432 Mass. 319, 323 (2000), quoting from Santiago, supra. Indeed, only repeated references and emphasis on a victim's character and personal characteristics risks undermining the rationality and integrity of a jury's verdict. Cf. Santiago, supra at 492-495 (prosecutor's unnecessary repletion of victim's age and pregnancy suggested jury should consider these facts in deliberations).
3. Instruction under wanton and reckless theory of involuntary manslaughter. The defendant's next argument, that the judge erred by not giving his requested instruction on the wanton and reckless theory of involuntary manslaughter as a lesser included offense of murder, is similarly unavailing. "Involuntary manslaughter is an unintentional killing 'resulting from wanton and reckless conduct ... [or] ... a battery not amounting to a felony which the defendant knew or should have known endangered human life.' " Commonwealth v. Tague, 434 Mass. 510, 518 (2001), quoting from Commonwealth v. Pierce, 419 Mass. 28, 33 (1994).
The defendant argues that he was entitled to an instruction on involuntary manslaughter on the theory that he engaged in "a physical struggle within the confines of the small concrete and cement cell in a manner resulting in fatal blunt force trauma" to the victim. This theory does not describe wanton and reckless conduct, but rather, a battery, which the defendant should have known endangered human life. The judge did instruct on the battery theory of involuntary manslaughter, referring to it as "battery manslaughter." There was no error.
Judgment affirmed.

"[A]utopsy revealed that the victim had suffered significant contusions around the head, face, and neck; a subdural hematoma, i.e. bleeding on the brain ; a fracture to the tracheal cartilage, i.e. the Adam's apple; and a fracture of the hyoid bone in the neck." In addition, the physician who conducted the autopsy testified that at least forty pounds of pressure would have been needed to cause the injury the victim sustained to his tracheal cartilage, and that he had only seen such severe injuries "caused by high velocity collisions like car accidents."

The defendant also claims the integrity of the grand jury was impaired because the Commonwealth "unfairly injected impermissible testimony into the grand jury proceedings in an apparent effort to depict the defendant as being the kind of person who would commit an act of murderous violence." However, the defendant failed to include this claim in his motion to dismiss and raises it for the first time on appeal. We therefore review this claim only to determine whether there has been a substantial risk of a miscarriage of justice. See Commonwealth v. Ali, 43 Mass. App. Ct. 549, 556 (1997). We disagree with the defendant's characterization of the grand jury proceedings, and discern no such risk.

To the extent the defendant claims that the trial judge erred by not striking "improper evidence" introduced by the prosecutor, this argument was largely relegated to a footnote, is unsupported by citation to authority, and does not rise to the level of appellate argument. See Commonwealth v. Gordon, 407 Mass. 340, 350 (1990) (claim of error in judge's denial of motion for mistrial unsupported by citation to legal authority was insufficient appellate argument).