SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. DAVID ROMAN

 
 Docket:
 SJC-13348
 
 
 Dates:
 September 11, 2024. - March 5, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, & Georges, JJ.
 
 
 County:
 Worcester
 

 
 Keywords:
 Homicide. Evidence, Admissions and confessions, Self-defense, Voluntariness of statement, Prior misconduct, Argument by prosecutor, State of mind, Consciousness of guilt, Relevancy and materiality, Intent, Inference. Practice, Criminal, Admissions and confessions, Voluntariness of confession, Assistance of counsel, Argument by prosecutor, State of mind, Instructions to jury, Postconviction relief, Capital case. Self-Defense. Intent. Malice.
 
 

             Indictment found and returned in the Superior Court Department on July 23, 2015.
            The case was tried before Janet Kenton-Walker, J., and a motion to reduce the verdict, filed on February 19, 2021, was considered by her.
            Neil L. Fishman for the defendant.
            Nathaniel R. Beaudoin, Assistant District Attorney, for the Commonwealth.
            BUDD, C.J.  In the evening hours of May 9, 2015, a Southbridge police officer was dispatched to conduct a well-being check at the residence of Joseph Stanick and found his dead, naked body laying facedown at the top of his staircase.  The defendant, David Roman, admitted to killing the victim but claimed it was in self-defense.  He was later indicted for the victim's death and ultimately convicted by a jury of murder in the first degree based on a theory of extreme atrocity or cruelty.[1]  In this consolidated appeal from the judgment of conviction and from the denial of his posttrial motion to reduce the verdict, the defendant argues that the evidence was insufficient to support his conviction, and that various errors committed by his counsel, the Commonwealth, and the judge require reversal; he additionally asks us to exercise our extraordinary power under G. L. c. 278, § 33E, to reduce the verdict.  After review, we affirm his conviction and decline to reduce the verdict.
            Background.  We summarize the facts as the jury could have found them, reserving certain details for later discussion.  Having recently lost his husband to cancer, the victim first met the defendant online in 2015.  The day they met, the victim and the defendant began to exchange sexually explicit messages and agreed to meet in person at the victim's home.  During their first meeting, the victim performed oral sex on the defendant.  The two men continued to send text messages sporadically for almost two weeks until meeting again on May 8, 2015.  
            The victim was found the next evening naked and covered in blood, with his right carotid artery and external jugular vein severed.  Bloodstains at the scene indicated that the defendant began stabbing the victim in his bedroom, then in the bathroom, and finally in the hallway at the top of the stairs where the victim collapsed.  A subsequent autopsy revealed that the victim had suffered blunt force trauma to the head and seventy-six stab wounds, thirty-four of which were on his neck.[2]  The medical examiner determined that the ultimate cause of death was multiple sharp-force injuries to the victim's head, neck, and torso.  A used condom was found lying next to the victim's bed.  Both the victim and the defendant were identified as potential contributors to deoxyribonucleic acid (DNA) found on the outside of the condom, and the defendant was identified as a potential contributor to DNA found on the interior, indicating the men had engaged in sexual activity. 
            The victim's cell phone records revealed text message exchanges with the defendant making plans to meet on the day the victim was killed.  Based on those messages, days after the murder, detectives interviewed the defendant at the Dudley police station, where the defendant admitted to killing the victim.  He claimed that he acted in self-defense after the victim attacked him with a knife when the defendant refused to engage in anal sex or with sex toys.  He further told the police that, after killing the victim, he disposed of the victim's cell phone in a public trashcan and threw the murder weapon into a nearby river.  The defendant also admitted to stealing rings and various antiques from the victim's home, ultimately gifting some of the items to his ex-wife, and selling others.  After the interview, the defendant was taken into custody.
            Discussion.  On appeal, the defendant alleges that the judge erred by admitting various pieces of evidence, that the Commonwealth made improper statements in its opening and closing arguments, that the jury instructions were erroneous, and that the evidence was insufficient to sustain a conviction of murder in the first degree.  He also asks us to reduce his verdict under G. L. c. 278, § 33E.
            1.  Evidentiary issues.  a.  Confession.  At trial, the Commonwealth played the audiovisual recording of the defendant's interview with detectives in which he admitted to killing the victim.  The defendant contends that his confession was involuntary and therefore inadmissible.  See Schneckloth v. Bustamonte, 412 U.S. 218, 225-226 (1973) ("if [the defendant's] will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process" [citation omitted]).  As such, the defendant argues that trial counsel was ineffective for failing to move to suppress the recording.  
            When evaluating claims of ineffective assistance in an appeal from a conviction of murder in the first degree, rather than the traditional Saferian standard,[3] we apply the standard required by G. L. c. 278, § 33E, to consider whether any error led to a substantial likelihood of a miscarriage of justice.  Commonwealth v. Kolenovic, 478 Mass. 189, 192-193 (2017).  Where, as here, the basis of the defendant's claim is that his counsel failed to seek to suppress his confession, the defendant must "demonstrate a likelihood that [a] motion to suppress would have been successful."  Commonwealth v. Colon, 482 Mass. 162, 188-189 (2019), quoting Commonwealth v. Comita, 441 Mass. 86, 91 (2004).
            As an initial matter, we note that the defendant was able to present his self-defense claim without having to take the witness stand by relying on his statements in the video recording of the now-contested interview.[4]  Putting aside whatever strategic considerations trial counsel may have made in deciding not to challenge the voluntariness of the interview, we detect no error in its admission.  
            To determine whether a statement is voluntary, the court must assess "whether, in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act" (citation omitted).  Commonwealth v. Tremblay, 460 Mass. 199, 207 (2011).  "A voluntary statement is one that is the product of a rational intellect and a free will, and not induced by physical or psychological coercion" (quotations and citation omitted).  Id.  "Relevant factors include, but are not limited to, 'promises or other inducements, conduct of the defendant, the defendant's age, education, intelligence and emotional stability, experience with and in the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency (whether the defendant or the police), and the details of the interrogation, including the recitation of Miranda warnings.'"  Id., quoting Commonwealth v. Mandile, 397 Mass. 410, 413 (1986).  "The presence of one or more factors suggesting a statement may have been made involuntarily is not always sufficient to render the statements involuntary."  Tremblay, supra, quoting Commonwealth v. Selby, 420 Mass. 656, 664 (1995).
            The interview, conducted by two State police detectives at the Dudley police department, began with the defendant being informed of, and waiving, his Miranda rights.  The interview room was approximately fifteen feet long and ten feet wide.  Although the door to the room was closed, the defendant remained unrestrained throughout.  During the interview, which began at 4:33 P.M. and concluded at 7:19 P.M., detectives encouraged the defendant to continue to talk to them, stating for example, "You don't want to come this far and get yourself into trouble now.  Continue to be honest with us, it's going to be helpful to you in the long run."
            The defendant now argues that the detectives' suggestions that it would be in the defendant's best interest to continue to speak with them undermined the voluntariness of his statements.  This was especially so, the defendant claims, given the combination of his emotional instability, mental illness, and "extraordinary life stresses," together with the fact that he had only a high school education and no other significant experience with law enforcement.  
            Based on our review of the recorded interrogation and considering all the circumstances, we conclude that the defendant's statement was voluntary.  The defendant was forty-eight years old at the time and had completed high school.  He appeared coherent and rational, and although he became upset at various times based on the questions being asked, he was able to engage in conversation with the detectives throughout the entire interview and attempted to exculpate himself by repeatedly emphasizing that he was attacked first.  See Commonwealth v. Libby, 472 Mass. 37, 49 (2015) (statement voluntary where adult interviewee was "coherent and articulate"); Commonwealth v. Sneed, 440 Mass. 216, 222 (2003) (statement voluntary where defendant "provide[d] an exculpatory version of events").  Moreover, the detectives spoke in a largely conversational tone and volume.  See Commonwealth v. Johnson, 463 Mass. 95, 103 (2012) (detective's nonhostile tone supports voluntariness).
            Although the defendant disclosed that he suffered from anxiety and bipolar disorder during the interview, mental health conditions do not necessarily render a defendant's statements involuntary.  Cf. Commonwealth v. Walters, 485 Mass. 271, 280-281 (2020) (defendant's statements voluntary notwithstanding suicidal ideation and acute emotional distress where he provided "detailed, coherent narrative of facts" and appeared "ground[ed] in reality").  
            We previously have held that "[a]n officer may suggest broadly that it would be 'better' for a suspect to tell the truth," as long as the officer does not convey to the defendant "an assurance, express or implied, that [his cooperation would] aid the defense or result in a lesser sentence."  Johnson, 463 Mass. at 105-106, quoting Commonwealth v. Meehan, 377 Mass. 552, 564 (1979), cert. dismissed, 445 U.S. 39 (1980).  See, e.g., Commonwealth v. Tolan, 453 Mass. 634, 643 (2009) (permissible for police to tell defendant, "You need to help yourself by telling the truth").  However, here the detectives suggested that the defendant "[c]ontinue to be honest" with them, lest he "get [him]self into trouble now."  To the extent the detectives thereby suggested that continuing to submit to interrogation represented an opportunity for him to avoid "trouble," this purported advice carried with it an element of deception, as the defendant had already admitted to being at the scene of the grisly murder and receiving oral sex from the victim.  Cf. Commonwealth v. Novo, 442 Mass. 262, 267-269 (2004) (officers' "plainly untrue" "now-or-never theme" suggesting interrogation was defendant's only opportunity to give his version of events "cast[] substantial doubt on the voluntariness of a subsequent confession").  Thus, like other "disfavored" uses of "trickery or deceitful tactics," the presence of police advice or encouragement of the kind offered here "is a factor to be considered when deciding if, in the totality of the circumstances, a confession is voluntary."  Commonwealth. v. Mazariego, 474 Mass. 42, 54 (2016).  See, e.g., Commonwealth v. Monroe, 472 Mass. 461, 471-472 (2015), quoting Commonwealth v. Baye, 462 Mass. 246, 256 (2012) (use of deceitful interrogation techniques "although not dispositive, contributed to the defendant's loss of his 'ability to make an unconstrained, autonomous decision to confess'").  However, based on the totality of circumstances, we are unconvinced that the detective's suggestion that it would be better for the defendant to continue talking with police rendered the statement involuntary.  
            We further note that the defendant himself acknowledged at the end of the interview that he received no promises of leniency in exchange for his inculpatory statements and received and waived adequate Miranda warnings.  Thus, the totality of circumstances indicate that the defendant's statement was voluntary; therefore, we must conclude that trial counsel was not ineffective because any attempt to suppress it would have been unlikely to succeed.  See Colon, 482 Mass. at 188-189.
            b.  Bad act evidence.  The defendant argues that bad act evidence was improperly admitted during his trial resulting in reversible error.  In particular, the defendant points to evidence of a restraining order taken out by his ex-wife, and evidence that he stole items belonging to the victim after killing him.  
            i.  Restraining order.  Prior to trial, the judge granted the defendant's motion in limine barring the Commonwealth from introducing evidence of his prior bad acts, including a restraining order that his ex-wife had obtained two years before the murder.[5]  See Commonwealth v. Crayton, 470 Mass. 228, 249 (2014) (bad act evidence is inadmissible to demonstrate bad character or propensity to commit crime).  During trial counsel's cross-examination of the ex-wife, she testified that she told the police that she did not think the defendant would hurt someone and "never saw [the defendant] hurt anybody."  However, in response to trial counsel's question about the defendant's move out of the marital home, the witness offered, unprompted, that she had "put a restraining order" on him.[6]  
            At sidebar, the Commonwealth argued that trial counsel had "opened the door" to further inquiry about the defendant's history of violence on redirect examination.  See Commonwealth v. Quinn, 469 Mass. 641, 648 (2014) (properly excluded evidence may be admissible if party opens door to its admission).  Trial counsel objected, noting that he neither asked about the restraining order nor followed up with any questions about it.  The judge nevertheless permitted the Commonwealth to explore the reason for the restraining order.  The Commonwealth then elicited testimony from the ex-wife that she obtained the restraining order because she feared the defendant's "angry outbursts and irrational behavior."  
            On appeal, the defendant claims that trial counsel was ineffective for eliciting the testimony regarding the restraining order, and that the judge erred by allowing the Commonwealth to further explore the subject.  As trial counsel objected to this testimony, the claim is preserved.  We thus consider whether there was error and, if so, whether the error was prejudicial.  Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).  "An error is not prejudicial if it 'did not influence the jury, or had but very slight effect . . . .'"  Id., quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).
            We agree with the defendant that the judge abused her discretion in permitting the prosecutor to ask additional questions regarding the restraining order where the witness raised the subject unprompted.[7]  However, we are not persuaded that the admission of this evidence was prejudicial.  
            When assessing the prejudicial effect of improperly admitted evidence, we consider, among other factors, "the frequency of the improper references; whether the error was central to the trial; the strength of the Commonwealth's case; whether limiting instructions mitigated the error; and whether the jury were able to sort between the permissible and impermissible evidence such that the defendant was not prejudiced by the error."  Commonwealth v. Correia, 492 Mass. 220, 232 (2023).
            Here, the defendant's ex-wife was the only witness to testify to the restraining order and did so briefly relative to the rest of her testimony.  See Commonwealth v. Rutherford, 476 Mass. 639, 649 (2017) (prior bad acts received "minimal attention").  Moreover, when she was questioned further by the prosecutor, the witness seemed reluctant to concede that having sought a restraining order meant that she was afraid of the defendant, thereby blunting the prejudicial effect of the evidence.[8]  See Correia, 492 Mass. at 233.  Although no specific limiting instruction was given, the judge's final instructions included a general instruction on bad act evidence.  Perhaps most importantly, evidence of a years-old restraining order "paled in comparison" to the evidence presented of the brutal killing of the victim to which the defendant confessed, his claim of self-defense, discussed infra, notwithstanding.  See Rutherford, supra.  This error did not prejudice the defendant.
            ii.  Larceny.  The defendant also argues that the judge erroneously admitted evidence that the defendant stole several items from the victim's home after killing him, later selling some and gifting others.  We disagree.[9]
            Evidence of other bad acts is admissible for limited purposes, including "to show a common scheme, pattern of operation, absence of accident or mistake, identity, intent, motive, or state of mind" (citation omitted).  Commonwealth v. Philbrook, 475 Mass. 20, 26 (2016).[10]  However, before admitting such evidence, the judge must find that the probative value of the evidence outweighs the risk of unfair prejudice.  Id.  
            Here, the fact that the defendant took the victim's valuables minutes after killing him was relevant to the animus the defendant felt toward the victim and to his consciousness of guilt.[11]  Thus, we agree with the judge's determination that the evidence was relevant to prove, among other things, the defendant's state of mind and consciousness of guilt, and that the probative value of the evidence outweighed the risk of unfair prejudice.  See Philbrook, 475 Mass. at 26 ("Questions of admissibility, probative value, and unfair prejudice are left to the sound discretion of the trial judge, and will not be overturned absent clear error").  Moreover, the judge appropriately instructed the jury that they could consider the evidence only for specific purposes, and emphasized that it could not be used as "substitute proof" that the defendant committed the crime charged -- an instruction she repeated in her final charge.  See Commonwealth v. Forte, 469 Mass. 469, 480 (2014) (limiting instructions "minimiz[e] any prejudicial effect").  There was no abuse of discretion.  
            c.  Evidence of victim's character.  Two witnesses who, like the defendant, met the victim online,[12] testified regarding the victim's calm temperament.[13]  The defendant argues that admission of this testimony was reversible error.  However, it was the defendant who called these witnesses to the stand.[14]  The testimony of these witnesses may have been unanticipated by the defense; nevertheless, where trial counsel either elicited or opened the door to testimony regarding the victim's character, we perceive no error, much less reversible error, in the admission of that evidence.[15]
            2.  Opening statements and closing arguments.  The defendant contends that he is entitled to a new trial because portions of the prosecutor's opening statement and closing argument were improper for various reasons.  We examine each in turn.
            a.  Appeals to sympathy.  We begin with the defendant's contention that the prosecutor used his opening and closing improperly to appeal to the jury's emotions by setting up a good versus evil narrative, with the victim as the former and the defendant as the latter. 
            With regard to the defendant, the prosecutor emphasized the defendant's theft of the victim's belongings and what the defendant did with them, including describing the defendant's ex-wife as being oblivious to the "horrifying history" of the gifts she received, and how the defendant bartered to "get as much money as possible" for the antiques he stole.  The prosecutor also emphasized that the defendant called the victim an "asshole" after having killed him.
            A prosecutor is permitted to argue "forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence."  Commonwealth v. Fernandes, 478 Mass. 725, 741 (2018), quoting Commonwealth v. Kozec, 399 Mass. 514, 516 (1987).  As discussed in part 1.b, supra, the evidence of the defendant's other bad acts properly was admitted; thus, it was not error for the prosecutor to reference it and use it to argue forcefully for a conviction.  See Fernandes, supra, quoting Kozec, supra.  See also Commonwealth v. Grier, 490 Mass. 455, 472 (2022) ("where a prosecutor's language is 'based in fact' . . . emotive language in a prosecutor's closing argument is permissible" [citation omitted]).  
            In contrast to the description of the defendant, the prosecutor's opening statement portrayed the victim as a lonely man whose "husband and companion for [thirty-four] years" had passed away, and who sought the companionship of other men online.  In his closing, the prosecutor highlighted the testimony of defense witnesses who described the victim as nonviolent and a "good guy."  
            A "prosecutor is entitled to tell the jury something of the person whose life ha[s] been lost in order to humanize the proceedings."  Commonwealth v. Cheng Sun, 490 Mass. 196, 209 (2022), quoting Commonwealth v. Santiago, 425 Mass. 491, 495 (1997), S.C., 427 Mass. 298 and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998).  Thus, it was not error to describe the victim's loneliness and attempts to meet men online, as it established needed context for how he and the defendant -- otherwise complete strangers –- first came into contact with each other.  
            However, the Commonwealth may not emphasize personal characteristics when they are "not relevant to any material issue."  Commonwealth v. Fernandes, 487 Mass. 770, 791 (2021), cert. denied, 142 S. Ct. 831 (2022), quoting Santiago, 425 Mass. at 495.  The concern is the risk of "undermining the rationality and thus the integrity of the jury's verdict."  Fernandes, supra, quoting Santiago, supra.  Here, it was improper for the prosecutor to emphasize that witnesses described the victim as a "good guy" because it was "not relevant to any material issue" and invited the jury to convict the defendant out of sympathy for the victim.[16]  See Commonwealth v. Simpson, 434 Mass. 570, 584 (2001) ("It is not relevant that the victim is a 'good' person and that the defendant is a 'bad' person, even assuming that these characterizations are accurate"). 
            Because the defendant did not object to these statements at trial, we review them for a substantial likelihood of a miscarriage of justice.  See Commonwealth v. Moore, 489 Mass. 735, 754 (2022).  In doing so, we assess the prosecutor's comments in the context of the entire statement, the judge's instructions to the jury, and the evidence introduced at trial.  Commonwealth v. Jones, 439 Mass. 249, 260-261 (2003).  Here, we conclude that the error did not create a substantial likelihood of a miscarriage of justice.  The prosecutor made the statement only once, it was supported by the record, the judge instructed the jury that closing arguments are not evidence, and "[t]he case against the defendant was overwhelming."  Commonwealth v. Carney, 472 Mass. 252, 258 (2015).
            b.  Disparagement of the defense.  The defendant contends that the prosecutor "mocked and otherwise disparaged" his defense by, among other things, arguing that it was "ridiculous" to claim that the victim did not suffer a "cruel and atrocious death."  The prosecutor also characterized the defendant's self-defense claim as "nonsensical" and "shift[ing] like the sands on the beach," suggesting that it warranted "an [A] for creativity and F for truthfulness."  Finally, the prosecutor described the various arguments as a "smoke screen from a very talented lawyer."[17]  None of these comments constitutes error.
            As stated, a prosecutor may argue "forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn" therefrom.  Fernandes, 478 Mass. at 741, quoting Kozec, 399 Mass. at 516.  "The realm of appropriate 'forceful' advocacy includes commentary on the relative merits of the defendant's arguments."  Walters, 485 Mass. at 289.  Although the Commonwealth may not disparage the defense, id., the prosecution's characterizations of the defendant's arguments were within the bounds of permissible commentary.  See Commonwealth v. Felder, 455 Mass. 359, 369 (2009) (permissible to reference attempts by defense counsel to create "smoke screens"); Commonwealth v. Espada, 450 Mass. 687, 699 (2008) (permissible to describe defendant's story as "ridiculous");  Commonwealth v. Obershaw, 435 Mass. 794, 807 (2002) (prosecutor entitled to comment, based on evidence, that defendant's story was "inherently unbelievable and implausible"); Commonwealth v. Deloney, 59 Mass. App. Ct. 47, 52 (2003) (permissible to describe defendant's story as "preposterous").  Thus, we conclude that the prosecutor's comments during his closing were a fair critique of the affirmative defense put forward by the defendant. 
            c.  Facts not in evidence.  The defendant also contends that the Commonwealth impermissibly argued facts not in evidence and asked the jury to engage in speculation during closing argument.  In particular, the defendant argues that it was improper for the prosecutor to suggest that the defendant used martial arts skills to subdue the victim,[18] and to ask the jury to infer that the defendant carried a knife with him to the victim's home on the day of the killing because he was a "fisherman."  "Although a prosecutor may urge the jury to draw reasonable inferences from the evidence, a prosecutor may not engage in speculation or surmise, or ask the jury to do so."  Commonwealth v. Brown, 490 Mass. 171, 192–193 (2022).  As discussed infra, while we agree that these portions of the closing were error, no reversal is required.
            Regarding the martial arts reference, in the recorded interview admitted in evidence, the defendant told detectives that he performed marital arts to cope with anxiety.  Later in the interview, the defendant explained that he used leverage to pin the victim down before he died.  When a detective asked the defendant whether he used his martial arts training, the defendant stated, "I was a wrestler so -- I learned all about gaining control over somebody."  Because the defendant clarified that he used a wrestling move, not martial arts, to subdue the victim, it was improper for the prosecutor to suggest otherwise in his closing.
            As for the comment regarding the knife, although there was evidence in the record that the defendant enjoyed fishing, there was nothing to support the assertion that fishermen generally carry knives.  Thus, it was improper for the prosecutor to ask the jury to speculate that because the defendant liked to fish, he was likely carrying a knife at the time of the offense.[19]  
            Because trial counsel objected to both comments when they were made, we review them for prejudicial error; that is, we consider "whether the error had, or might have had, an effect on the jury and whether the error contributed or might have contributed to the verdicts."  Commonwealth v. Semedo, 456 Mass. 1, 12 (2010), quoting Commonwealth v. Grimshaw, 412 Mass. 505, 508-509 (1992).  When reviewing errors in a closing argument, "the entire record, including the balance of the prosecutor's argument, becomes relevant in determining whether the error was prejudicial to the point of requiring a reversal of the conviction."  Commonwealth v. Hrabak, 440 Mass. 650, 654 (2004).
            Applying that standard here, the prosecutor's statement that the defendant used "martial arts training and wrestling skills" to gain leverage over the victim likely had no effect on the jury, especially when viewed in light of the defendant's own statement that he used his wrestling skills to achieve the same objective.  See Commonwealth v. Souza, 492 Mass. 615, 635-636 (2023) (prosecutor's "minor deviation" misstating evidence did not create substantial likelihood of miscarriage of justice where there was "little doubt" jury would not have been swayed [citation omitted]).  
            More concerning is the prosecutor's unsupported suggestion that the defendant carried a knife with him to the scene because he liked to fish.  The defendant argues that this statement was prejudicial because it goes to the heart of his theory that he killed the victim in self-defense or as a result of mitigating factors.  Even assuming the jury believed that the defendant had a knife when he arrived at the victim's home, and that this weakened his self-defense argument, the record is replete with evidence that the defendant did not kill in self-defense or as a result of mitigating factors.  That evidence includes the fact that the defendant stabbed the victim seventy-six times after he, in his words, "got pissed" at the victim, while the defendant himself received only one minor cut to his hand.  Further, the prosecutor made this suggestion only once in a closing argument spanning sixteen transcript pages, and the judge instructed the jury that opening statements and closing arguments were not evidence and that their memory of the evidence was to control.  See Commonwealth v. Kapaia, 490 Mass. 787, 805 (2022).  There was no prejudice.
            3.  Jury instructions.  The defendant also argues that a new trial is warranted because the judge improperly instructed the jury regarding third prong malice, mitigating circumstances, and inferences, resulting in a substantial likelihood of a miscarriage of justice.  We examine each in turn, keeping in mind that because the defendant did not object to any of these instructions at trial, we review them for a substantial likelihood of a miscarriage of justice.  Commonwealth v. Young, 461 Mass. 198, 207 (2012).  Moreover, "[w]hen reviewing jury instructions, '[w]e evaluate the instruction as a whole, looking for the interpretation a reasonable juror would place on the judge's words.'"  Id., quoting Commonwealth v. Trapp, 423 Mass. 356, 361, cert. denied, 519 U.S. 1045 (1996).  "We do not consider bits and pieces of the instruction in isolation."  Young, supra.
            a.  Third prong malice instruction.[20]  The defendant claims that the judge's instructions had the effect of reducing the mens rea element required to convict him.  The defendant argues that the judge erred in defining "general intent" as "things [we do] more or less unconsciously, such as sitting down in a chair."  The judge later went on to instruct the jury that the first and second prongs of malice require proof of specific intent, but she did not use that term when discussing the third prong.  As a result, the defendant contends, the judge implied that the defendant could be found guilty under a theory of third prong malice if he committed the crime "unconsciously."  We disagree. 
            First, to the extent that the defendant argues the jury were left with the impression that third prong malice requires only "general intent," that is accurate, as was the judge's instruction, which matched the model jury instructions on murder with extreme atrocity or cruelty.  See Commonwealth v. Boateng, 438 Mass. 498, 515 (2003) (only general intent required to prove third prong malice). 
            As for the judge's instruction on general intent, immediately after describing it as things done "more or less unconsciously," the judge continued, "We would not do it unless our mind first resolved to do it, but it does not require any concentration or focusing of the mind."  Viewing the judge's instruction in its entirety, she properly conveyed the meaning of the term.  See Young, 461 Mass. at 210 ("The balance of the instructions conveyed the proper law").  No "reasonable juror" would have taken this instruction to mean that the defendant could be convicted if he had been literally unconscious or otherwise incapable of forming intent to do an action at the time of the offense.  Id. at 207.  There was no error.
            b.  Mitigating circumstances.  The judge properly instructed the jury that to find the defendant guilty of murder in the first degree, among other things, the Commonwealth was required to prove beyond a reasonable doubt that there were no mitigating circumstances.  See Commonwealth v. Ridley, 491 Mass. 321, 333-334 (2023).  In this case, the judge explained that the mitigating factors the jury could consider were heat of passion on a reasonable provocation, heat of passion induced by sudden combat, or excessive use of force in self-defense.  She further explained that if the jury found that the Commonwealth failed to disprove the existence of mitigating circumstances, a "killing that would otherwise be murder in either the first or second degree is reduced to the lesser offense of voluntary manslaughter."  See Commonwealth v. Yat Fung Ng, 489 Mass. 242, 257 (2022), S.C., 491 Mass. 247 (2023) ("Voluntary manslaughter is an unlawful killing arising not from malice, but from [mitigating circumstances]" [citation omitted]).
            The defendant takes issue with the instruction that followed:  "You do not need to be unanimous as to which mitigating circumstance was not proven beyond a reasonable doubt, only that the Commonwealth failed to disprove all three mitigating circumstances."  We agree that this instruction was a misstatement of the law.  See Commonwealth v. Acevedo, 427 Mass. 714, 716 (1998) (error to instruct "that malice is negated by provocation only if provocation is proved beyond a reasonable doubt").  The correct rule is that "the Commonwealth must prove, and the jury must find, beyond a reasonable doubt" that no mitigating factors existed.  Id.  See Model Jury Instructions on Homicide 74 (2018) ("the Commonwealth is required to prove beyond a reasonable doubt that there were no mitigating circumstances that reduce the defendant's culpability").  Instructing the jury that they were to determine whether any mitigating factor "was not proven beyond a reasonable doubt" potentially had the effect of improperly shifting the burden of proof from the Commonwealth to the defendant.  
            We are not convinced that this misstatement requires us to order a new trial.  The judge previously had instructed on multiple occasions in multiple ways that the Commonwealth was required to prove beyond a reasonable doubt that there were no mitigating circumstances to prove the defendant guilty of murder in the first degree.  And in the same sentence as the misstatement, she correctly explained that the jury should find the defendant guilty of voluntary manslaughter if "the Commonwealth failed to disprove all three mitigating circumstances."  Thus, the judge repeatedly and correctly instructed that the Commonwealth bore the burden to disprove the existence of mitigating circumstances beyond a reasonable doubt.  The judge's instructions on murder in the first degree, murder in the second degree, the beginning of her instructions on voluntary manslaughter, and her specific instructions on heat of passion on reasonable provocation, sudden combat, and excessive force in self-defense all reiterated the correct standard.  So too did her response to the jury's question regarding mitigating circumstances.[21]  
            Because the judge's misstatement of law was sandwiched between multiple correct statements of the law and was de minimis in the context of the broader instructions, the error did not cause a substantial likelihood of a miscarriage of justice.  See Commonwealth v. Oliveira, 445 Mass. 837, 844–845 (2006) (judge's "slip of the tongue" in context of correct instructions did not constitute reversible error); Commonwealth v. Lynch, 439 Mass. 532, 542-544, cert. denied, 540 U.S. 1059 (2003) (two incorrect instructions and two correct instructions on voluntary manslaughter did not create substantial likelihood of miscarriage of justice where judge "repeatedly emphasized" proper burden of proof throughout).  This is not the kind of case where "the center of gravity of the provocation instructions was strongly on the side of misstatement."  Acevedo, 427 Mass. at 717.
            c.  Inferences.  Finally, the defendant contends that the judge erred when she informed the jury that they "may draw inferences, gain conclusions only from facts proved to you beyond a reasonable doubt."  This error, the defendant claims, had the potential to interfere with the jury drawing reasonable inferences from the evidence that might have been favorable to the defendant, potentially raising reasonable doubt as to whether the Commonwealth disproved self-defense or mitigating circumstances. 
            We agree with the defendant that this instruction was an incorrect statement on the quantum of proof needed to establish subsidiary facts.  Although proof of essential elements must be established beyond a reasonable doubt, "preliminary questions of fact and subsidiary facts need only be proved by a preponderance of the evidence."  Commonwealth v. Edwards, 444 Mass. 526, 543 (2005).  However, we disagree that this error, to which the defendant did not object, created a substantial likelihood of a miscarriage of justice.  See Young, 461 Mass. at 207.
            Given the overwhelming evidence of guilt against the defendant, see discussion infra, even if the jury did improperly fail to draw some inferences in favor of the defendant based on facts that they found had been proven by a preponderance of the evidence but not beyond a reasonable doubt, we are "substantially confident that, if the error had not been made, the jury verdict would have been the same."  Commonwealth v. Ruddock, 428 Mass. 288, 292 n.3 (1998).
            4.  Sufficiency of the evidence.  The defendant argues that given his self-defense claim, the judge erred in denying his motions for a required finding of not guilty because the Commonwealth presented insufficient evidence to prove that the defendant committed murder in the first degree under a theory of extreme atrocity or cruelty.  
            "In reviewing claims of insufficient evidence, we view the evidence presented at trial, together with reasonable inferences therefrom, in the light most favorable to the Commonwealth to determine whether any rational jury could have found the defendant guilty of the offense beyond a reasonable doubt."  Commonwealth v. Martinez, 487 Mass. 265, 275 (2021).  See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979).  
            As the defendant raised a claim of self-defense, the Commonwealth was "required to prove beyond a reasonable doubt that the defendant did not engage in the proper use of self-defense."  Commonwealth v. Grassie, 476 Mass. 202, 209-210 (2017), S.C., 482 Mass. 1017 (2019).  That is, the Commonwealth had to prove at least one of the following beyond a reasonable doubt:  "(1) the defendant did not actually believe that he was in immediate danger of death or serious bodily harm from which he could save himself only by using deadly force; (2) a reasonable person in the defendant's position would not reasonably have believed that he was in immediate danger of death or serious bodily harm from which he could save himself only by using deadly force; (3) the defendant did not use or attempt to use all proper and reasonable means in the circumstances to avoid physical combat before resorting to the use of deadly force; or (4) the defendant used more force than was reasonably necessary in all the circumstances."  Id. at 210.
            The defendant relied on his videotaped interview played for the jury to mount his self-defense claim.  In the interview, the defendant stated that he stabbed the victim to death only after the victim attacked him for refusing to engage in certain sex acts.  He admitted to pinning the victim down and stabbing him repeatedly because he was "so irate" that the victim allegedly tried to kill him.  
            Despite the defendant's claim of self-defense, he received virtually no injuries, save for perhaps an accidentally self-inflicted cut on his finger.[22]  In contrast, the medical examiner who performed the autopsy testified that the victim was stabbed seventy-six times.  Moreover, after killing the victim, the defendant admitted to taking several items from the house, including the victim's cell phone, which he discarded in order to conceal the crime; the murder weapon, which he threw in a river; and other items that, as mentioned supra, he gifted or sold.[23]  Given the evidence presented and viewing it in the light most favorable to the Commonwealth, a rational jury could have found that the defendant did not engage in proper self-defense beyond a reasonable doubt.[24]
            Moreover, the evidence presented was sufficient to prove that the defendant committed murder in the first degree with extreme atrocity or cruelty.  At the time of the defendant's trial, to support such a conviction, "the Commonwealth was required to prove beyond a reasonable doubt that the defendant committed an unlawful killing with malice aforethought, and with extreme atrocity or cruelty, indicated by 'indifference to or taking pleasure in the victim's suffering, consciousness and degree of suffering of the victim, extent of physical injuries, number of blows, manner and force with which delivered, instrument employed, [or] disproportion between the means needed to cause death and those employed'" (citations omitted).  Commonwealth v. Melendez, 490 Mass. 648, 665 (2022).[25]  "Malice is 'an intent to cause death, to cause grievous bodily harm, or to do an act which, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood that death would follow'" (citation omitted).  Id.
            As discussed supra, the victim was stabbed seventy-six times, causing wounds on his neck and back, among other parts of his body.  Thirty-four of the victim's wounds were on his neck, and the cut severing his jugular vein appeared to have been created with multiple passes of a knife.  This evidence provides more than enough support for a conviction for murder in the first degree with extreme atrocity or cruelty.  See, e.g., Young, 461 Mass. at 204 (sufficient evidence of extreme atrocity or cruelty where defendant stabbed and cut victim twelve times). 
            5.  Relief pursuant to G. L. c. 278, § 33E.  Finally, the defendant requests that we reduce the verdict, pursuant to our power under G. L. c. 278, § 33E.  After plenary review of the evidence, we see no reason to grant a new trial or reduce the degree of guilt.  As explained supra, the weight of the evidence amply supports the jury's verdict.
            Conclusion.  The defendant's conviction is affirmed.  The order denying the defendant's motion to reduce the verdict is also affirmed.
So ordered.
 
--------------------------------------------
 
            [1] The defendant was also indicted for larceny of over $250 but pleaded guilty to that charge just before the start of trial.
            [2] No weapon was recovered.
            [3] Claims of ineffective assistance of counsel otherwise are evaluated to determine whether any action or inaction of the attorney fell "measurably below that which might be expected from an ordinary fallible lawyer" and, if so, "whether it has likely deprived the defendant of an otherwise available, substantial ground of defence."  Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).
            [4] Under our "humane practice" rule, if the voluntariness of the defendant's statement had been a live issue at trial, the judge would have had to conduct a voir dire to determine whether the statement was made voluntarily.  Commonwealth v. Kirwan, 448 Mass. 304, 318 (2007).  If so, the judge would instruct the jury that they were required to find beyond a reasonable doubt that the defendant's statement was voluntary before considering it as evidence.  Id.  See Commonwealth v. Tavares, 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982). 
            [5] At the pretrial motion hearing, trial counsel stated his intention not to "open any doors."  The prosecutor assured the court that he had prepared the witness and told her "many times" to focus on the case at hand, not what happened in the past.  
            [6] The defendant's ex-wife testified:
"Yes, he moved out of the house because I felt he was in a really bad mental state and that -- I thought it was best that he wasn't around the children.  So I put a restraining order, and he went to his brother's house."
            [7] As we conclude that trial counsel did not "open the door" to the introduction of this evidence, we reject the defendant's ineffective assistance of counsel claim.
            [8] In connection with explaining why she sought the restraining order, the witness stated, "I wasn't afraid of him.  He may have followed me, you know, and that -- but I wasn't afraid of him."
            [9] As noted supra, the defendant pleaded guilty to larceny just before trial, so the evidence was no longer relevant to establishing guilt for that crime.  In a footnote in his brief, the defendant asks this court to "consider whether the trial court's acceptance of defendant's guilty plea to the larceny charge – which occurred after the jury had been selected – violated G. L. c. 263, § 6, and, if so, whether the error created a substantial likelihood of a miscarriage of justice as to the larceny conviction and/or the murder conviction."  General Laws c. 263, § 6, states, in pertinent part:
"Any defendant in a criminal case other than a capital case, whether begun by indictment or upon complaint, may, if he shall so elect, when called upon to plead, or later and before a jury has been impanelled to try him upon such indictment or complaint, waive his right to trial by jury by signing a written waiver thereof and filing the same with the clerk of the court."
            This section pertains largely to a defendant's ability to waive a jury trial in a noncapital case and is inapplicable here where the judge simply accepted the defendant's tender of a guilty plea to the charge of larceny.  There was no error.
            [10] Other bad acts may also be used to "show the whole transaction of which the crime was a part, so long as the evidence is connected with the facts of the case and not . . . too remote in time" (citation and quotations omitted) Commonwealth v. Lora, 494 Mass. 235, 246 (2024).
            [11] For example, the defendant told police that he took the victim's belongings because he thought the victim was an "asshole," and blamed the victim for "ruining [his] life."  He also admitted that he took the victim's cell phone and discarded it to conceal his own involvement in the crime.
            [12] The website through which the men made contact with the victim allows users to communicate and comment on each other's photographs.    
            [13] The first witness testified that when he declined the victim's sexual overtures, the victim "took it well," and that the victim "was a nice guy."  In response to further questions on direct examination, the witness denied that the victim became angry or violent or "anything like that."  On cross-examination, the witness confirmed that he "never saw [the victim] angry or violent."  The second witness testified that the victim "never pushed anything gay on [him]," a statement he confirmed on cross-examination.
            [14] The defendant called these witnesses in an apparent attempt to paint the victim as increasingly frustrated with men who rebuffed his sexual advances.
            [15] To the extent that this could be considered as an ineffective assistance of counsel claim, it similarly would fail.  See Commonwealth v. Kolenovic, 471 Mass. 664, 675 (2015), S.C., 478 Mass. 189 (2017) (counsel not ineffective although his "strategic choices did not yield an outcome favorable to the defendant," where his choices were "rational and entirely consistent with what 'lawyers of ordinary training and skill in the criminal law' would deem to be competent" [citation omitted]).
            [16] There was no error, however, in the prosecutor's adjacent argument that the victim had not become violent with other men who had rebuffed his sexual advances.  As discussed supra, the defendant introduced this evidence, and once in evidence, it was relevant to rebut the defendant's claim of self-defense.
            [17] The defendant also argues, as he did at trial, that the prosecutor's reference to him as a Yankees fan was unduly prejudicial because the trial took place in "Red Sox territory."  Because the defendant objected to this statement, we review for prejudicial error.  Santiago, 425 Mass. at 500.  The defendant was unable to articulate any more specific theory of error at trial, and we discern none on appeal.  The reference was made by the prosecutor when describing the defendant's text messages to his son about the Yankees as an indicator of his rational state of mind four days after murdering the victim.  Nothing in the record suggests that the reference was an attempt to excite the jury's emotions, nor do we believe that it would have.  Cf. Commonwealth v. Mahdi, 388 Mass. 679, 693 (1983), quoting Commonwealth v. Graziano, 368 Mass. 325, 332 (1975) ("Appeals to racial, religious, or ethnic prejudices are especially incompatible with the concept of a fair trial because of the likelihood that such references will 'sweep jurors beyond a fair and calm consideration of the evidence'").
            [18] The prosecutor stated: 
"At the top of the stairs, [five foot, ten inch], 170 pound, [forty-eight] year old David Roman caught up to [five foot, seven inch], 170 pound, [fifty-nine] year old Joseph Stanick and used his martial arts training and wrestling skills to leverage [Stanick].  You heard that in the interview."
            [19] At oral argument, the Commonwealth appeared to concede that this was improper, admitting that the statement about the knife "went over the line."
            [20] To establish third prong malice, the Commonwealth must prove that, "in the circumstances known to the defendant, a reasonably prudent person would have known that, according to common experience, there was a plain and strong likelihood that death would follow the contemplated act."  Commonwealth v. Vizcarrondo, 427 Mass. 392, 394 n.3 (1998), S.C., 431 Mass. 360 (2000) and 447 Mass. 1017 (2006), quoting Commonwealth v. Sneed, 413 Mass. 387, 388 n.l (1992).
            [21] The defendant asserts that the judge erred in her response to two jury notes received during their deliberations asking for clarification on unanimity for murder in the first degree and seeking examples of mitigating circumstances.  In response, the judge referred the jury back to her written instructions on those topics.  The judge declined to provide specific examples.  There was no error.  A judge's discretion to formulate responses to jury questions "is broad" (citation omitted), Ridley, 491 Mass. at 334, and is not abused where the response is accurate and appropriate to the question posed, Commonwealth v. West, 487 Mass. 794, 804 (2021).  The judge was under no obligation to provide examples of mitigating circumstances.  To the contrary, we have cautioned judges against providing explicit examples in other circumstances.  See, e.g., Commonwealth v. Rosa, 422 Mass. 18, 28 (1996) (best to avoid examples describing reasonable doubt that have "numeric or quantifiable implications").
            [22] No weapons were found at the scene.
            [23] We also note that the defendant's recorded statement was rife with inconsistencies, large and small, that fairly could have diminished his credibility with the jury, including his claim that he only stabbed the victim five or six times.  The defendant also initially lied about whether he stole the victim's antique picture frames after the killing, and how much money he got for them when he ultimately sold them. 
            [24] We similarly conclude that the evidence was sufficient to prove that the defendant did not kill as a result of reasonable provocation or sudden combat.  Even crediting the defendant's claim that the victim attacked him first, the evidence in the light most favorable to the Commonwealth supports a brutal slaying that took considerable time.  The jury could have reasonably concluded that there were no circumstances that would have "provoke[d] a reasonable person to lose self-control in the heat of passion," Commonwealth v. Howard, 479 Mass. 52, 61 (2018), nor that the defendant fairly reacted while in mutual combat, see id. at 58, quoting Commonwealth v. Webster, 5 Cush. 295, 308 (1850) (sudden combat occurs where "angry words suddenly arise, and a conflict springs up in which blows are given on both sides, . . . [when] no unfair advantage is taken in the outset, and the occasion is not sought for the purpose of gratifying malice, and one seizes a weapon and strikes a deadly blow").
            [25] As we have noted in other cases, see, e.g., Melendez, 490 Mass. at 665 n.8, "[t]his court since has refined this standard in Commonwealth v. Castillo, 485 Mass. 852, 860-866 (2020)" (citation omitted).  In cases tried after Castillo, the jury may not base a conviction only on the degree to which the victim suffered, but "must consider whether the defendant's conduct was extreme in its brutality or its cruelty."  Melendez, supra.  Because Castillo, supra at 866, is not applied retroactively, it does not affect our analysis, and at any rate, the evidence presented would satisfy either standard.